FILED

2016 Apr-28  AM 11:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

SHAQUILLE DIJION PARKER,          )
                                  )
              Plaintiff           )
                                  )
    vs.                           )     Case No.  5:15-cv-01877-VEH-HGD
                                  )
SGT. VELEZ, et al.,               )
                                  )
              Defendants          )

## <u>MEMORANDUM OPINION</u>

The magistrate judge filed a report and recommendation on March 3, 2016, recommending that this action be dismissed without prejudice for failing to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b).  (Doc. 9). The plaintiff has filed objections to the report and recommendation.  (Doc. 13). Under 28 U.S.C. § 636(b)(1)(C), the district judge must make *de novo* determinations of the portions of the report or specified recommendations to which objection is made.  Having carefully considered the plaintiff's objections, the court finds as follows:

Many of the plaintiff's objections to the report and recommendation are simply a reiteration of his allegations from his complaint and a general disagreement with the

magistrate judge's application of the law to those allegations.  For instance, the plaintiff bases several of his objections on his belief that he was unconstitutionally placed in a suicide cell.  (Doc. 13 at 1-2).  However, the plaintiff's reliance on *Wright v. McMann*, 387 F.2d 519 (2nd Cir. 1967), in support of his argument is misplaced. In *Wright*, the strip cell was alleged to be filthy, the plaintiff was forced to stand at attention in front of his cell door anytime an officer appeared, he was not allowed to nap under threat of being beaten, and the windows were left open in sub-freezing temperatures.  *Id.*, at 521.  The plaintiff's allegations in this action fall far short of such horrific conditions.

The plaintiff next objects to the report and recommendation because, prior to his attack on a jail official, he had informed "the psych nurse" he was hallucinating,[1] but did not receive help.  (Doc. 13 at 2).  Somewhat related to this allegation, the plaintiff asserts that both placement in the suicide cell and being housed in his cell for 23 hours a day prior to the suicide cell were "mental torture."  (*Id*., at 2-3).  The

---

[1] No such allegation appears in the plaintiff's complaint.  The plaintiff does not allege in either his complaint or his objections that he suffers from any mental illness, treated or otherwise, which could cause hallucinations.  The plaintiff was seen by a nurse before his placement in the suicide cell, but does not allege that she treated him for anything other than cuts and bruises sustained in attacking the guard.  (Doc. 1 at 5).  He does not allege that he ever needed or received any treatment for mental illness.  Moreover, the plaintiff cites to no case, and the court can find none, which allows hallucinations by a prisoner to excuse the prisoner's attack on a prison guard or any of the other actions the plaintiff admittedly took.  In *Chatham v. Adcock*, 334 Fed.App'x 281 (11th Cir. 2009), the Eleventh Circuit did hold that "[p]laintiff's remaining symptoms–anxiety, nightmares, and hallucinations–do not rise to the level of a physical injury that is 'greater than de minimis.'" *Id.*, at 285.

case the plaintiff relies on to support such a claim, *Thomas v. Farley*, 31 F.3d 557 (7th Cir. 1994), is wholly inapposite.  In that case, the Court held that the failure to allow an Indiana state inmate to attend his mother's funeral due to negligence in the handling of the request for leave was not cruel and unusual punishment.  *Id*., at 559.  Similarly, the plaintiff's citations to cases which hold that psychological injury (doc. 13 at 2-4), without physical injury, might support an Eighth Amendment claim in instances of egregious conduct do not assist the plaintiff's claims as he does not allege facts which could support a finding of psychological injury.  For example, in *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996), the plaintiff was placed in administrative detention pending a transfer due to threats from rival gangs within the prison.[2]  *Id.*, at 269.  In contrast to the plaintiff's belief that *Babcock* supports a finding that he can pursue this action solely on a theory of psychological torture, the *Babcock* Court ruled that

---

[2] The *Babcock* Court concluded:

> This case thus squarely presents the question whether or not a federal prisoner who was not assaulted by, and who is no longer at risk from, fellow inmates may nevertheless maintain a *Bivens* claim for money damages based solely on prison officials' past failure to take measures to protect the prisoner from inmates known to pose a danger to the prisoner.  Our answer is "no" at least where, as here, exposure to risk of harm cannot be said to result from an official's malicious or sadistic intent.

*Babcock*, 102 F.3d at 270.

> Babcock's claim of psychological injury does not reflect
> the deprivation of "the minimal civilized measures of life's
> necessities," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991);
> *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), that is the
> touchstone of a conditions-of-confinement case.  Simply
> put, Babcock alleges, not a "failure to prevent harm,"
> *Farmer*, 511 U.S. at —, 114 S.Ct. at 1977, but a failure to
> prevent exposure to risk of harm.  This does not entitle
> Babcock to monetary compensation.

*Babcock*, 102 F.3d at 272.  Thus, while the *Babcock* Court did not foreclose the possibility of a claim based on psychological injury, nothing in its ruling adds any weight to the plaintiff's claims.

The plaintiff restates many of his claims from his complaint, including that a number of the defendants made comments and/or threats to him, which he believes violated his constitutional rights.  (Doc. 13 at 3).  He asserts that the magistrate judge failed to address how he was "constantly threatened by Cpl. Bell that he was going to kill me over and over, and how my life was threatened by officer Watkins."[3]  (*Id*., at 8).  As stated in the report and recommendation, in the Eleventh Circuit, verbal

---

[3] In his complaint, the plaintiff asserted that after he attacked the officer, "Cpl. Bell kept repeatedly telling me he was going to kill me with his bare hands.  He kept saying 'your going to die today bitch.'  I told him that it wasn't personnel I was going threw some things in that cell and I just went crazy."  (Doc. 1 at 5) (errors in original).  The plaintiff claims Officer Watkins then started cursing him and yelling at him, until the other officers pulled him out of the room."  (*Id*.).  After the nurses did an assessment on him, the plaintiff showered.  (*Id*., at 5-6).  As previously stated, nothing in this set of facts demonstrates the type of threats which have been held sufficient for purposes of Eighth Amendment claims.  The plaintiff alleges for the first time in his objections that he believes he caught a foot fungus from the shower.  (Doc. 13 at 8).  Although the plaintiff states "this type of treatment is without a doubt a[n Eighth] Amendment violation," (*id*.), the court finds no facts alleged which are sufficient for stating such a claim.

abuse alone is insufficient to state a constitutional claim. *See Hernandez v. Florida Dep't of Corr.*, 281 Fed. App'x 862, 866 (11th Cir. 2008) ("Hernandez's allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim."). In contrast, the case to which the plaintiff directs the court, *Wilson v. Silcox*, 151 F.Supp.2d 1345 (N.D.Fla. 2001), considered whether threats made in retaliation for the exercise of First Amendment rights could state a constitutional claim. Similarly, *Scher v. Engelke*, 943 F.2d 921 (8th Cir. 1991), discussed threats of violence as a constitutional claim when they were made in retaliation for the plaintiff's reporting a guard's attempt to obtain illegal weapons. No claim of retaliation is before this court. The plaintiff also directs the court to *Chandler v. District of Columbia Dept. of Corr.*, 145 F.3d 1355 (D.C.Cir. 1998). In that action, the Court held:

> Chandler's allegation does not fall into any of the categories of verbal threat that courts have heretofore recognized as potentially violative of the Eighth Amendment – namely, the repeated threat of physical harm, *see Doe v. Welborn*, 110 F.3d 520, 524 (7th Cir. 1997) (stating that prisoner did not show "the kind of extreme and officially sanctioned psychological harm that might support a claim for damages under the Eighth Amendment"), sexual harassment, *see Freitas*, 109 F.3d at 1338, or a threat accompanied by conduct supporting the credibility of the threat, *see, e.g., Northington v. Jackson*, 973 F.2d 1518, 1522 (10th Cir. 1992) (describing how parole officer

> held gun to prisoner's head while threatening to kill him).
> This case therefore raises an issue of first impression: Do
> a prisoner's allegations that a guard threatened to have him
> killed and that prison officials ignored his consequent
> administrative complaints state claims upon which relief
> could be granted?

*Chandler*, 145 F.3d at 1361. Unlike the facts in that case, here the plaintiff asserts

jail guards made comments to him regarding the fact that he was not injured badly

after the plaintiff admittedly attacked a jail guard with a weapon. (Doc. 1 at 5, 8-9,

11). Nothing in these allegations rise to the level of duress inflicted in cases such as

*Chandler, supra.*

The plaintiff again complains that "Officer Williams did not get me water"

although a sign on his cell said "give liquids every hour." (Doc. 13 at 5). As noted

in the report and recommendation, "[h]aving a drink of water withheld for a short

length of time can hardly be considered cruel and unusual." (Doc. 9 at 18, citing

*Jacoby v. Baldwin Cty.*, 2013 WL 2285108, *14 (S.D. Ala. 2013), *aff'd*, 596

Fed.App'x 757 (11th Cir. 2014)).

As to the plaintiff's assertion that various defendants knew he should not have

been in the suicide cell because he was not suicidal, the court finds this to be a repeat

of the same allegations from his complaint, which were adequately and thoroughly

addressed in the report and recommendation. (*See* doc. 9, at 15-17). Courts have

repeatedly held that prison officials must be able to take actions to insure the safety

of inmates and staff without the court second-guessing prison officials on such matters of prison security. *See e.g., Bell v.Wolfish*, 441 U.S. 520, 546-47 (1979); *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998); *Sims v. Mashburn*, 25 F.3d 980, 985 (11th Cir. 1994); *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995) ("in these circumstances, the deprivation of personal property serves the legitimate penological goals of preventing injury to the inmate, injury to corrections offciers, and damage to the facility.").

The plaintiff next complains that he had to eat off a styrofoam tray without a spoon, and this was because Officer Terry was conspiring with other officers to make the plaintiff's time as hard as possible.[4]  (Doc. 13 at 5, 8-9).  Nothing in this allegation reflects anything approaching a violation of a constitutional right.  The magistrate judge adequately addressed the plaintiff's contention that the lack of a spoon with which to eat violated his constitutional rights, finding that the lack of eating utensils is not the type of extreme deprivation prohibited by the Eighth Amendment.  (Doc. 9 at 17-18, citing *Murphy v. Cobb County Adult Detention Center*, 2007 WL 1020798 (N.D. Ga. 2007)).

The plaintiff asserts that, after he set off the jail sprinkler system, flooded the jail, and had to be removed from his cell due to water damage, defendant Terry

---

[4] In his complaint, the plaintiff asserted, "[t]hey said they wasn't giving me a spoon and my belongings because I was a threat to the facility.  These people were crazy."  (Doc. 1 at 21).

suggested to the plaintiff that he should have drowned.  (Doc. 13 at 6).  As discussed previously, verbal threats, standing alone, are insufficient to state a claim for violation of a constitutional right.  Similarly, the plaintiff's allegations that he was sexually harassed by Officer Terry and that Officer Lewter made him strip, squat and cough before he was placed in the suicide cell a second time (doc. 13 at 6-7) fall far short of a showing of a constitution violation.

In his objections, the plaintiff claims for the first time that he was not allowed to contact his lawyer in "any type of way, this is a major constitutional violation." (Doc. 13 at 7).  However, in his complaint, the plaintiff noted that he was escorted to court and back by the defendant officers.  (Doc. 1 at 22).  He does not allege that the defendants interfered with his ability to talk to counsel while at court, nor does he allege that his counsel was prohibited from contacting him.  Additionally, in his complaint, the plaintiff alleged he could not contact his family.  (*Id.*, at 21).  He did not mention counsel.  (*Id.*).  Although the plaintiff did assert that the defendants "threw all of my legal mail away," he added, "they said all of it got wet in the flood." (*Id.*).

Finally, the plaintiff objects to the magistrate judge's finding that defendant Watkins did not use excessive force against the plaintiff.  (Doc. 13 at 10).  The magistrate judge carefully considered this claim in the report and recommendation,

noting that "not every malevolent touch by a prison guard gives rise to a federal cause of action." (Doc. 9 at 19, citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). While the plaintiff asserts that defendants Watkins "could have killed me by choking me," the plaintiff received no injury from this alleged choking.[5] (Doc. 13 at 10). As noted in the report and recommendation, while the plaintiff does not have to allege a significant injury for an excessive use of force claim, the Eleventh Circuit does require that a plaintiff suffer more than a *de minimis* injury to establish an Eighth Amendment violation. *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). Here, the plaintiff provides no more than a great deal of speculation, both in his complaint and his objections to the report and recommendation, based on his subjective interpretations of what the defendants intended by their overt actions. The plaintiff alleges in both his complaint and his objections that defendant Watkins "choked" him and said he would kill him if the plaintiff ever "tried him like that." (Doc. 1 at 7; doc. 13 at 10). The plaintiff then speculates that, since Cpl. Bell walked

---

[5] Although not discussed in the report and recommendation, the lack of injury bars any recovery for compensatory or punitive damages under the PLRA. *See, e.g.*, *Al-Amin v. Smith*, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s physical injury requirement."); *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007) ("Plaintiff seeks nominal, compensatory, and punitive damages. It is clear from our case law, however, that the latter two types of damages are precluded under the PLRA."), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011). "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312-13 (11th Cir. 2002).

off, he and officer Watkins "clearly set this up" so "he should be held liable as well." (Doc. 13 at 10). Because no facts supporting a claim of excessive force are discernable from the plaintiff's allegation, defendant Bell had no duty to intervene.

As set forth in the report and recommendation, the plaintiff, armed with a weapon, had just attacked another officer in the jail. (Doc. 9 at 21). With this background, the court finds that defendant Watkins could have perceived a need for a reasonable use of force. *See Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Given the factual basis underlying the plaintiff's claims, the plaintiff cannot show an element of an excessive force claim, namely that force used was not applied in good faith to restore discipline. *See e.g., Skritch v. Thorton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002).

The plaintiff concludes, "In my opinion, my claims pass the *Sandin v. Conner* test. All the Court has to do is just review all the facts." (Doc. 13 at 10-11). *Sandin v. Conner* does not assist the plaintiff. In *Sandin*, the Supreme Court held:

> Admittedly, prisoners do not shed all constitutional rights at the prison gate, *Wolff*, 418 U.S., at 555, but "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Jones*, 433 U.S., at 125, quoting *Price v. Johnston*, 334 U.S. 266, 285, (1948). Discipline by prison

> officials in response to a wide range of misconduct falls
> within the expected perimeters of the sentence imposed by
> a court of law.

*Sandin v. Conner*, 515 U.S. 472, 485 (1995).

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation, and the objections thereto, the magistrate judge's report is hereby **ADOPTED** and the recommendation is **ACCEPTED**. Therefore, in accordance with 28 U.S.C. § 1915A(b), this action is due to be dismissed without prejudice for failing to state a claim upon which relief can be granted.

A Final Judgment will be entered.

**DATED** this 28th day of April, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge